**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| CLARENCE ROGERS NEWBY and | ) | Case No. 04-31294 |
| CATHY CHRISTINE NEWBY, | ) | |
| | ) | |
| Debtors. | ) | |

## MEMORANDUM OPINION

This case comes before the Court on a motion to compel turnover of insurance proceeds filed by U.S. Bank N.A. ("Bank"). The insurance proceeds at issue derive from the former residence of the Debtors against which the Bank held a deed of trust. The Bank foreclosed its deed of trust last year, unaware that the property had been destroyed by a fire. The Bank now seeks payment of the entire amount of the mortgage debt without any reduction for the amount the Bank bid at the foreclosure sale. The Trustee and the Debtors object to the Bank's motion, contending that the Bank may only recover from the insurance proceeds the amount of the mortgage debt remaining after reduction for the Bank's foreclosure sale bid.

## BACKGROUND

The facts are undisputed (and read like a law school exam question).

The Debtors, Clarence Rogers Newby and Cathy Christine Newby, filed for protection under chapter 7 of the Bankruptcy Code on October 1, 2004. The Debtors owned and resided on real property ("Property") located at Rt. 2, Box 312 A, Nevada, Missouri.[1] The Property was subject to a note and deed of trust in favor of the Bank in the original amount of $111,500.

On November 2, 2004, the Bank filed a motion for relief from the automatic stay to proceed with its state law remedies against the Property. The Court granted the Bank's motion on January 20, 2005, but stayed the effective date of its order for 120 days to allow the chapter 7 trustee, Norman E. Rouse ("Trustee"), an opportunity to sell the property. The Trustee was not able to sell the property within the time allowed, and on July 20, 2005, the Debtors received a discharge and

---

[1] The legal description of the Property is: THE NORTH TWENTY-EIGHT (N28) ACRES OF THE FOLLOWING DESCRIBED TRACT: THE EAST HALF (E½) OF THE SOUTHEAST QUARTER (SE½) OF SECTION 8, TOWNSHIP 35, RANGE 30 WEST.

their bankruptcy case was closed.

On July 22, 2005, the Bank foreclosed on the property.  The Bank was the successful bidder at the foreclosure sale, with a credit bid of $99,771.17.  Unbeknownst to the Bank (and the Trustee), however, a fire had destroyed the Property one month earlier.

The Debtors had an insurance policy with State Farm Insurance Co. ("State Farm") which covered the claim of loss arising from the fire.  The Bank was named as a loss payee under the policy.  The policy also contained a standard, or "union," mortgage clause.  (The significance of that clause is discussed below.)  Sometime in early October 2005, the Debtors received a check from State Farm in the amount of $164,408.55.  The check was payable to the Debtors and the Bank as co-payees, but the Debtors delivered the check to the Trustee, not to the Bank.  The Trustee filed a motion to reopen the Debtors' bankruptcy case to administer the insurance proceeds, and the Court reopened the case on October 22, 2005.

The Bank filed the motion now before the Court to compel turnover of the insurance proceeds on February 17, 2006, after repeated and unsuccessful demands on the Trustee for the proceeds.

**DISCUSSION**

The parties – the Bank, Trustee, and Debtors – agree that the Bank is entitled to a portion of the insurance proceeds now held by the Trustee.  The question is, "How much?"  The Bank argues that out of the $164,408.55 of insurance proceeds, it is entitled to $134,823.95, the amount allegedly owed to the Bank as of February 17, 2006, the date the Bank filed its motion to compel turnover.  The Trustee and the Debtor contend that the Bank is only entitled to the amount of its secured claim minus $99,771.17, the amount of the Bank's bid at the foreclosure sale of the Property.

The parties' dispute essentially mirrors the split of authority among Missouri courts regarding the scope of a "union" mortgage clause. The primary function of a union mortgage clause, such as the one present in the Debtors' policy with State Farm, is to protect a mortgagee from a mortgagor's breach of policy conditions.  "[T]he union mortgage clause operates as an independent contract of insurance between the mortgagee and the company upon the former's interest, which cannot be defeated by a breach of the conditions of the policy on the part of the mortgagor or solely

by his act."[2]  Missouri courts, as well as the parties here, appear to be in agreement on this point.

The courts are not unanimous, however, on the effect a union mortgage clause has on a mortgagee's interest in property (or insurance proceeds flowing therefrom) after a mortgagee has foreclosed on the property.  The Bank relies on a line of cases which hold that the mortgagee's interest is enlarged by foreclosure and unaffected by the amount the mortgagee may have bid at a foreclosure sale.[3]  On the authority of these cases, the Bank argues that it is entitled to the entire amount of the mortgage debt, without reduction for the $99,771.17 the Bank bid at the foreclosure sale.[4]

The Debtor and Trustee, on the other hand, rely on a line of cases which hold that a mortgagee's interest is limited to the amount of the mortgage debt and is reduced (or eliminated) by the mortgagee's bid at the foreclosure sale.[5]  The Debtors argue that the Court should follow these cases because they are more in line with established principles of insurance law and because the Bank's cases are factually inapposite – the main cases cited by the Bank, *Travers* and *Prudential*, involve properties damaged *after* foreclosure had taken place, whereas the Debtors and Trustee rely on *Northwestern*, a case involving a fire loss that occurred *before* the foreclosure sale, which is what happened here.

The Court agrees with the Debtors on both of these points.

Insurance treatises state unequivocally that the insurable interest of a mortgagee in property extends only to the amount of the mortgage debt and that a mortgagee purchasing at foreclosure subsequent to a loss has no right to any proceeds over the amount necessary to satisfy his or her

---

[2] *Prudential Ins. Co. of America v. German Mut. Fire Ins. Ass'n of Lohman*, 105 S.W.2d 1001, 1005 (Mo. Ct. App. 1937).

[3] *Travers v. Universal Fire & Casualty Insurance Co.*, 34 S.W.3d 156 (Mo. Ct. App. 2000); *Prudential Ins. Co. of America v. German Mut. Fire Ins. Ass'n of Lohman*, 105 S.W.2d 1001 (Mo. Ct. App. 1937).

[4] In this regard, the Bank's position is actually inconsistent with the cases on which it relies.  Under *Travers* and *Prudential*, the Bank would arguably be entitled to all of the insurance proceeds and not just the amount of the outstanding mortgage debt.

[5] *Economy Preferred Ins. v. Schomaker*, 900 S.W.2d 249 (Mo. Ct. App. 1995); *Northwestern Nat'l Ins. Co. v. Mildenberger*, 359 S.W.2d 380 (Mo. Ct. App. 1962).

mortgage.[6]   These principles are echoed in *Northwestern*, wherein the Missouri Court of Appeals held that a mortgagee was not entitled to collect any proceeds from a pre-foreclosure fire where the mortgagee bid the full amount of the mortgage debt at the foreclosure sale.[7]

The Bank contends that the Court should not follow *Northwestern* because the Missouri Supreme Court endorsed a contrary case, *Prudential*, which held that a mortgagee's interest in property is enlarged upon foreclosure.[8]  *Travers*, another case on which the Bank relies, builds on *Prudential* and holds that upon foreclosure a mortgagee's interest in insurance proceeds arising from a post-foreclosure insurable loss is not limited by the mortgage debt or diminished by a foreclosure sale bid.[9]

The Court declines to follow *Travers* and *Prudential* for three reasons.

First, as noted above, all of the cases upon which the Bank relies – *Travers*, *Prudential*, and *Reliance* – deal with post-foreclosure property damage and insurance claims, whereas this case involves a claim for pre-foreclosure losses.  This distinction is not trivial.  Foreclosure is a voluntary act with consequences the foreclosing party should anticipate and accept.  The *Northwestern* court specifically distinguished the case before it from *Prudential*.[10]  It also emphasized the fact that the mortgagee "elected" to foreclose and bid the full amount of the debt at foreclosure, and that it had to accept the consequence of that election, *i.e.*, giving up its interest in the insurance proceeds.  Similarly, the Bank here elected to foreclose, bidding $99,771.17 for the property, even though it could have pursued the insurance proceeds instead.  It is unfortunate that the Bank did not know that the Property had been destroyed by a fire when the Bank foreclosed, but the rule of caveat emptor

---

[6] *See e.g.*, 4 *Couch on Insurance* 3d § 65:36 (1996) (cited in *Travers*, 34 S.W.3d at 163); 4 *Couch on Insurance* 3d § 65:38 (2005); Appleman & Appleman, 5A *Insurance Law and Practice* § 3403 (1970) (stating that "the full or partial extinguishment of the mortgage debt itself, whether prior to or subsequent to the loss, will preclude, to the extent thereof, any recovery on the policy by the mortgagee").

[7] *Nortwestern, supra.*

[8] *Reliance Ins. Co. of Penn. v. Comty. Fed. Sav. and Loan Ass'n*, 440 S.W.2d 929, 930 (Mo. 1969) (citing *Prudential, supra.*)

[9] *Travers*, 34 S.W.3d at 162-164.

[10] *Northwestern*, 359 S.W.2d at 384.

4

applies to foreclosure sales,[11] and the Court cannot protect the Bank from the consequences of that rule or the Bank's failure to conduct even the slightest due diligence before it bid at the foreclosure sale.

Second, the Court does not believe that the Missouri Supreme Court's decision in *Reliance* requires the Court to follow *Prudential* or *Travers* (even assuming that *Reliance, Prudential*, and *Travers* apply to pre-foreclosure losses), for the simple reason that *Reliance*'s endorsement of *Prudential* was dicta. *Reliance* involved a mortgagee's recovery under its own insurance policy; *Prudential* and *Travers* involved recovery under a mortgagor's policy pursuant to a union mortgage clause. "The policy of errors and omissions coverage here (in *Reliance*) was issued directly to appellant, and so the factual situation is different than in the *Prudential* case, supra. No 'union' or 'standard open mortgage clause' is here involved, and the insuring agreement is not so limited."[12]

Finally, the Court believes that *Northwestern* is consistent with Missouri law and better reasoned than *Travers* and *Prudential*. In particular, the Court is persuaded by the *Northwestern* Court's discussion of how the purpose and nature of the insurance policy between the mortgagor and insurer narrow the scope of a union mortgage clause. Quoting another Missouri Court of Appeals case, the *Northwestern* court noted:

> The above case holds that the 'union' clause operates as an independent contract of insurance, which cannot be defeated by a breach on the part of the mortgagor of the conditions of the policy, or solely by his act. Observe that, while it is an independent contract, *it is such only for a limited purpose,* so that the act of the mortgagor alone and of itself cannot defeat the right of the mortgagee.[13]

Clarifying that limited purpose, the court states further:

> That purpose is essentially the same as the purpose of the security covered by the deed of trust, and is to see that the money loaned is repaid . . . [I]t is the debt, the creditor-debtor relationship, that gives birth to the right to compel the mortgagor to

---

[11] *See Williams v. Kimes*, 996 S.W.2d 43, 46 (Mo. 1999).

[12] *Reliance*, 440 S.W.2d at 931.

[13] *Id*. at 384 (quoting *Swihart v. Missouri Farmers Mutual Tornado, Cyclone and Windstorm Ins. Co.*, 138 S.W.2d 9 (Mo. Ct. App. 1940)).

purchase insurance and to collect the proceeds and serves as the supporting pillar for the whole structure so far as the mortgagee is concerned. Once that relationship is terminated, the reason for any claim on the part of the mortgagee on the insurance proceeds likewise evaporates. Surely it cannot be denied that purchase at the foreclosure for the full amount of the balance due on the note constituted payment and extinguished the debt. It would not logically matter whether that payment was made by a stranger or by Mrs. Mildenberger (the mortgagor) from other funds or in the method here involved, purchase by the mortgagee for the full amount of the balance due on the indebtedness. So long as the payment was made in the full amount of the indebtedness, it extinguished the debtor-creditor relationship and thus terminated the claim upon the proceeds of the insurance money which had inured to the benefit of the mortgagee upon the occurrence of the fire. A liability may be fixed by the occurrence of conditions which provide for its existence, such as the liability of the insurance company in the instant case to pay to the mortgagee became fixed upon the happening of the fire, but after it becomes thus fixed, it may terminate as to the party in whose favor it existed, here the mortgagee. In the instant case what caused that termination was the payment of the debt by purchase at the foreclosure sale for the full amount of the balance due on the note, and ended the creditor-debtor relationship of the mortgagee and mortgagor.[14]

In the case before this Court, the debtor-creditor relationship did not terminate as it did in *Northwestern* because the Bank only credit bid in a portion of the mortgage debt, but the same principles apply. The extent of the Bank's interest in the property or insurance proceeds flowing therefrom is limited to its interest as a creditor, *i.e.*, the outstanding amount of the mortgage debt. And the Bank's reduction of that debt resulted in a corresponding reduction of its interest in the Property or, as it turned out, in the insurance proceeds. Therefore, the Bank is only entitled to recover the balance of the mortgage debt remaining after credit is given for the Bank's $99,771.17 bid at the foreclosure sale.

There remains one final matter. Because the insurance proceeds appear to exceed the full amount of the Debtors' obligation to the Bank, the Bank qualifies as an over-secured creditor entitled to post-petition interest and reasonable contractual fees and charges.[15] However, the post-

---

[14] *Id.* at 385-86.

[15] 11 U.S.C. § 506(b).

petition interest to which the Bank is entitled is limited to the interest on the entire mortgage debt until the date of foreclosure plus the interest on the mortgage debt as reduced by the Bank's $99,771.17 until the date of the Bank's motion to compel turnover.  The Bank shall submit an amended proof of claim itemizing the interest, fees, and charges to which it believes it is entitled.

## CONCLUSION

For the reasons stated herein, the Court finds that from the insurance proceeds received from State Farm pursuant to its insurance policy with the Debtors the Trustee shall turn over to the Bank the amount of its secured claim calculated in accordance with this memorandum opinion.  A separate order granting the Bank's motion in part and denying it in part will be entered pursuant to Fed. R. Bank. P. 9021.

ENTERED this 5th day of June 2006.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

Norman E. Rouse
Cynthia M. Woolverton
Corey M. Swischer